IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
VIRGINIA C. MOON, on her own      )
behalf and on behalf of the       )  2:11-cv-03102-GEB-CKD
Peters Rush Habib & McKenna       )
401(k) Profit Sharing Plan,       )
                                  )  ORDER
              Plaintiff,          )
                                  )
         v.                       )
                                  )
DAVID H. RUSH, MARK A. HABIB,     )
and JAMES P. MCKENNA,             )
                                  )
              Defendants.         )
_____ )
```

Defendants David H. Rush ("Rush"), Mark A. Habib ("Habib"), and James P. McKenna ("McKenna"; collectively, "Defendants") move under Federal Rule of Civil Procedure ("Rule") 12(h)(3) for dismissal of Plaintiff's Employment Retirement Income Security Act ("ERISA") and declaratory relief claims, arguing subject matter jurisdiction does not exist for these claims. Defendants also seek dismissal of Plaintiff's state law claims, arguing the Court should decline to exercise supplemental jurisdiction over the state claims if Plaintiff's ERISA claims are dismissed. In the alternative, Defendants move under Rule 56 for summary judgment on Plaintiff's ERISA claims. The gravamen of Defendants' dismissal motion is their argument that "[Moon] is not a 'beneficiary' of the [Peters Rush Habib & McKenna 401(k) Profit Sharing Plan ('the Plan')] within the meaning of ERISA and, therefore, . . . has

1  no standing to bring her claims under ERISA[, 29 U.S.C. § 1132(a) ('§
2  1132')]." (Defs.' Mot. ("Mot.") 1:24-27.) Plaintiff Virginia C. Moon
3  ("Moon") opposes the motion.
4  　　　　After considering the uncontroverted facts and each party's
5  argument, it became evident in light of Moon's current status under
6  ERISA, and concurrent state court proceedings pertinent to her status,
7  that Moon's ERISA claims should be dismissed under the prudential
8  ripeness doctrine, and that the Court should discontinue exercising
9  supplemental jurisdiction over Moon's state claims under 28 U.S.C. §
10 1367(c)(3). Because of the considerations involved with the prudential
11 ripeness doctrine and the Court's discretionary decision whether to
12 continue exercising supplemental jurisdiction over Moon's state claims,
13 issues involved in Defendants' pending motion will not be reached unless
14 an issue has a bearing on the following *sua sponte* decision.

## I. FACTUAL BACKGROUND

16 　　　　The following facts are relevant to decision on the ripeness
17 issue. These facts are from the parties' statements of undisputed facts
18 required by a local rule, and additional facts and evidence submitted by
19 a party.
20 　　　　On September 26, 1995, an uncontested Judgment of Dissolution
21 concerning Moon and Rush's former marriage was filed in the Superior
22 Court of California, County of Butte ("Butte County Superior Court
23 divorce case"). (Habib Decl. Filed in In re Rush, No. FL 004059 (Cal.
24 Super. Ct. Dec. 23, 2011) (hereinafter "Habib Decl.") ¶¶ 2-3 (attached
25 as Ex. 7 to Wasow Decl.).) A document entitled "Stipulation & Order
26 Dividing Community Interest in Employee Benefit Plan—Qualified Domestic
27 Relations Order" (hereinafter "the DRO") was filed on the same date.
28 (Stip. & Order (hereinafter "DRO"), In re Rush, No. FL 004059 (Cal.

1  Super. Ct. Sept. 26, 1995) (attached as Ex. 1 to Wasow Decl.). The DRO
2  lists Rush as a Plan participant and Trustee of the Plan and Moon as an
3  alternate payee. Id. ¶ 4.
4         The DRO states:
5         [Moon] is acknowledged to own and shall be accorded
          an account with the plan which shall consist of the
6         segregation of . . . [o]ne-half of the community
          interest in the approximately $6,500 cash; . . .
7         [a]ll of the community's interest in 1525 Dayton
          Rd. . . . ; [a]ll of the community interest in
8         Winder Baker receivable of $50,000 . . . ; [and
          o]ne-half of the community interest in the real
9         property on Carr Drive in Ventura, California.
10 Id. ¶ 9. The address for serving notice to the Plan is listed in the DRO
11 as "PETERS et al PROFIT SHARING PLAN [for benefit of ('f/b/o')] DAVID H.
12 RUSH[,] c/o Trustee: David H. Rush." Id. ¶ 4. Habib has been the Plan
13 Administrator since 1996. (Habib Decl. ¶ 1.)
14         "Rush, in his capacity as Trustee of the Plan, opened a
15 separate Plan account for the benefit of [Moon], and deposited Plan
16 funds into this account in 1996 and 1999." (Pl.'s Statement of Add'l
17 Facts ("Pl.'s SAF") 2:10-12.) Further, the Plan has owned a 20.2881
18 percent interest in the Dayton Road property since 1995. (Habib, "Dayton
19 Asset Management History," June 21, 2010 (attached as Ex. 5 to Wasow
20 Decl.).)
21         In a letter to Habib dated February 25, 2010, Moon's counsel,
22 Teresa Renaker ("Renaker"), requested a "pension benefit statement
23 indicating . . . the total benefits [Moon] ha[d] accrued under the
24 Plan." (Letter from Renaker to Habib, Feb. 25, 2010 (attached as Ex. 8
25 to Wasow Decl.).) Renaker also requested "the initial accounting [and]
26 periodic accountings" of Moon's interest in the Plan since 1995. Id.
27         In another letter to Habib dated June 16, 2010, Renaker
28 stated:

3

> You have asserted that the Plan records do not include the [DRO]. . . . I do not understand you to assert that the Plan is not bound by the [DRO]. If that understanding is incorrect, please so inform me right away.

(Letter from Renaker to Habib, June 16, 2010 (attached as Ex. 9 to Wasow Decl.).) Habib sent Renaker a letter dated June 22, 2010, to which he attached several documents concerning Moon's interest in the Plan's assets. (Letter from Habib to Renaker, June 22, 2010 (attached as Ex. 10 to Wasow Decl.).) Habib stated in the letter:

> If [Moon] has a mechanism by which she can take title to Dayton and to the existing FBO [Moon] bank account into another pension plan, or if she wants to take title to those assets directly (as a reported distribution), let me know. Assuming she leaves her assets in the Plan, she will receive a separate account statement for 2010 and future years.

Id. Habib did not mention the qualification of the DRO in his letter. Id.

In a letter to Habib dated October 14, 2011, Renaker requested information concerning whether Habib had "taken any steps to determine the qualification of the DRO." (Letter from Renaker to Habib, Oct. 14, 2011 (attached as Ex. 12 to Wasow Decl.).) "By letter dated November 15, 2011, [Habib], as the Plan Administrator, determined that the [DRO] . . . was not a 'qualified [DRO]' [('QDRO')] because [it] did not satisfy the requirements of ERISA § 206(d)(3)(c)(ii)." (Defs.' Statement of Undisputed Facts # 1.) Habib's letter was Plaintiff's first notification that Habib had determined the DRO was not a qualified DRO. (Pl.'s SAF 3:20.)

Moon filed her complaint in this federal court on November 21, 2011. (ECF No. 1.) Moon alleges in her complaint that each Defendant breached his fiduciary duties under ERISA, and that Habib failed to

4

provide her with required account statements and information that she requested under ERISA. Moon also alleges three state claims against Rush concerning their co-ownership of real property in which the Plan holds an interest.

"On December 23, 2011, . . . Habib and Rush filed a motion in the Butte County [Superior Court] divorce case requesting a judicial determination that the [DRO] was not qualified." (Wasow Decl. ¶ 16.) Moon opposed the motion. Id. ¶ 17. On March 13, 2012, the Butte County Superior Court ruled that the DRO is not QDRO under ERISA. (Perkins Decl. ¶ 3; Hr'g Trans. 3:7-11, In re Rush, No. FL 004059 (Cal. Super. Ct. Mar. 13, 2012) (attached as Ex. 1 to Perkins Decl.).) Moon appealed the Butte County Superior Court's determination that the DRO is not qualified under ERISA. (Pl.'s SAF 4:2-3.) Defendants filed their dismissal motion in this case on April 16, 2012. (ECF No. 24.)

## II. DISCUSSION

Defendants argue that after Moon filed her ERISA claims in this federal court, "the Superior Court of California, County of Butte, a court of competent jurisdiction under ERISA, . . . ruled that the 1995 [DRO] referenced in [Moon's] Complaint[,] . . . is not a 'qualified [DRO]' . . . under ERISA § 206(d)(3)(J)." (Mot. 1:20-24.) Defendants argue that "[s]ince a court of competent jurisdiction has determined that the DRO does not constitute a QDRO, [Moon] is not . . . a 'beneficiary' under ERISA . . . , and she has no standing to bring her [ERISA] claims[.]" Id. at 15:2-5. "Section 1132, the civil enforcement provision of ERISA, provides that a civil action may only be brought by a participant, a beneficiary, a fiduciary, or the Secretary of Labor." McBride v. PLM Int'l, Inc., 179 F.3d 737, 742 (9th Cir. 1999) (citing 29

5

U.S.C. § 1132). "The list of potential claimants in [§] 1132 is exclusive." Id.

Moon's ERISA claims are based on her allegation that she is "a beneficiary of the Plan pursuant to ERISA . . . , 29 U.S.C. § 1056(d)(3)(J)[,]" by virtue of her status as an alternate payee under the DRO. (Compl. ¶¶ 6 & 11.) Under ERISA, "[t]he term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). In addition, "ERISA confers beneficiary status on a nonparticipant spouse . . . in only narrow circumstances delineated by its [QDRO] provisions[.]" Boggs v. Boggs, 520 U.S. 833, 846 (1997). Under these provisions, "[a] person who is an alternate payee under a *qualified* [DRO] shall be considered for purposes of any provision of [ERISA] a beneficiary under the plan." 29 U.S.C. § 1056(d)(3)(J) (emphasis added). "The term 'alternate payee' means any . . . former spouse . . . of a participant who is recognized by a QDRO as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." Id. § 1056(d)(3)(K).

"A [DRO] must meet certain requirements [set forth in § 1056(d)(3)(C)-(E)] to qualify as a QDRO." Boggs, 520 U.S. at 846. "Primary responsibility for determining whether a DRO is a QDRO . . . rests with the plan itself." Tr. of Dirs. Guild of Am. v. Tise, 234 F.3d 415, 420 (9th Cir. 2000). "Upon obtaining a [DRO] in a state court proceeding, an alternate payee who seeks to establish a right to payment pursuant to that order from an ERISA-covered benefit plan must present the order to the pension plan administrator for a determination of whether it is a [QDRO]." Id. "If the plan administrator determines that the DRO does not meet the requirements of a QDRO, the . . . alternate

6

payee may appeal the plan administrator's decision to a court of competent jurisdiction." Marriage of Nasca v. PeopleSoft, 87 F. Supp. 2d 967, 969 (N.D. Cal. 1999) (citing 29 U.S.C. § 1056(d)(3)(H)(I)).

"ERISA grants federal courts exclusive jurisdiction over most ERISA cases, including those where the plaintiff requests equitable relief to enforce provisions of ERISA or enjoin violations of the statute, while providing state courts with concurrent jurisdiction over cases brought 'to recover benefits' or 'to enforce . . . or to clarify' rights under the terms of the plan itself." Mack v. Kuckenmeister, 619 F.3d 1010, 1018 (9th Cir. 2010) (quoting 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), 1132(e)(1)). However, "[b]ecause a state court has concurrent jurisdiction over . . . proceedings [to enforce, clarify, or collect] under 29 U.S.C. § 1132(a)(1)(B), . . . it follows that it has jurisdiction to decide the intermediate question of whether or not the DRO is a QDRO." Id.

In enacting ERISA, "Congress expressly contemplated that further state court proceedings might ensue . . . through which the alternate payee could attempt to cure any defects in the original DRO and obtain an enforceable QDRO." Tise, 234 F.3d at 422. "The QDRO provisions of ERISA do not suggest that [the alternate payee] has no interest in the plan[] until she obtains a QDRO, they merely prevent her from enforcing her interest until the QDRO is obtained." In re Gendreau, 122 F.3d 815, 819 (9th Cir. 1997); see Carmona v. Carmona, 603 F.3d 1041, 1056 (9th Cir. 2010) ("ERISA provides for further state court proceedings after the initial DRO is issued to clarify and fix any technical defects in the original DRO."); cf. In re Gendreau, 122 F.3d 815, 818 (9th Cir. 1997) ("[T]he order by the Family Court, if not

7

itself a proper QDRO, at least gave [the ex-spouse] a right to obtain a proper QDRO[.]").

Defendants argue "this Court lacks federal subject matter jurisdiction over [Moon's ERISA] claims[,]" since "the [Butte County Superior Court] . . . ruled that the 1995 [DRO] referenced in [Moon's] Complaint[,] . . . and upon which [her] claim of statutory standing rests, is not a 'qualified [DRO]' . . . under ERISA § 206(d)(3)(J)." (Mot. 1:20-24.) Defendants argue that "[s]ince the DRO is not a QDRO, [Moon] is not a 'beneficiary' of the [Plan] . . . and, therefore, [she] has no standing[.]" Id. at 1:24-27. Defendants rely on a copy of an order from the Butte County Superior Court in support of this argument, in which that court determined that Moon's DRO is not a QDRO. Moon argues she "has a colorable claim to a benefit under the Plan" since "there is no question that she will at some point in the future be entitled to a benefit under the Plan pursuant to a [QDRO] (as a result of reopening the divorce proceeding, if that becomes necessary)." (Opp'n 14:22-25 & 15:28.)

Although Defendants argue the Butte County Superior Court's determination concerning Moon's beneficiary status deprives this Court of subject matter jurisdiction (Mot. 1:20-27), the Ninth Circuit has held that a plaintiff's statutory standing under § 1132 "is a substantive element of [an ERISA] claim, not a prerequisite for subject matter jurisdiction." Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 971 (9th Cir. 2012) (holding that "participant" status is an element of the plaintiff's ERISA claim); see Bilyeu v. Morgan Stanley Long Term Disability Plan, --- F.3d ----, No. 10-16070, 2012 WL 2333629, at *5 (9th Cir. June 20, 2012) (treating "fiduciary" status under ERISA as an element of an ERISA claim); Harris v. Amgen, Inc., 573 F.3d 728,

732 n.3 (9th Cir. 2009) ("Although the district court dismissed [plaintiff's ERISA] claims for lack of subject matter jurisdiction, a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim."); Vaughn v. Bay Envtl. Mgmt., Inc., 567 F.3d 1021, 1024 (9th Cir. 2009) (same). However, Moon's current status under ERISA and concurrent state court proceedings implicate prudential ripeness principles.

"Ripeness has two components: constitutional ripeness and prudential ripeness." In re Coleman, 560 F.3d 1000, 1004 (9th Cir. 2009) (citation omitted). "While [constitutional] ripeness is jurisdictional, [p]rudential considerations of ripeness are discretionary." McClung v. City of Sumner, 548 F.3d 1219, 1224 (9th Cir. 2008) (internal quotation marks and citation omitted). Here, "the facts presented raise only prudential concerns." Id. "The Supreme Court has developed a two-part test for determining the prudential component of ripeness . . . : the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. (internal quotation marks and citation omitted).

Moon's ERISA claims are not "fit[] . . . for [federal] judicial decision," since the Butte County Superior Court has already determined her DRO is not a QDRO. Id. The Butte County Superior Court's determination precludes Moon from pursuing her ERISA claims until she obtains a QDRO. The record evinces that the proceedings in state court concerning the DRO have not concluded. Moon has appealed the Butte County Superior Court's determination that the DRO is not a QDRO, and each party in this federal case argues that the Butte County Superior Court can revise the DRO to cure the deficiencies. In light of the ongoing proceedings in state court, dismissal of Moon's ERISA claims

does not appear to cause Moon to endure hardship, since she needs to obtain a QDRO before she can prosecute her ERISA claims.

Since Moon's federal claims are not ripe, they are dismissed without prejudice. Therefore, the Court may *sua sponte* decide whether to continue exercising supplemental jurisdiction over the state claims. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a [state] claim" if "all claims over which it has original jurisdiction" have been dismissed. The "discretion [whether] to decline to exercise supplemental jurisdiction over state . . . claims is triggered by the presence of one of the conditions in § 1367(c), [and] is informed by the . . . values of economy, convenience, fairness and comity" as delineated by the Supreme Court in United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). "In a case in which all federal law claims are eliminated before trial, the balance of these factors will generally point toward declining to exercise jurisdiction over the remaining state law claims." Nishimoto v. Federman-Bachrach & Assoc., 903 F.2d 709, 715 (9th Cir. 1990).

Judicial economy does not favor continuing to exercise supplemental jurisdiction since none of the state claims have been addressed on the merits. See Otto v. Heckler, 802 F.2d 337, 338 (9th Cir. 1986) ("[T]he district court, of course, has the discretion to determine whether its investment of judicial energy justifies retention of jurisdiction or if it should more properly dismiss the claims without prejudice.") (citation omitted). Nor do the comity and fairness factors weigh in favor of exercising supplemental jurisdiction, since "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Gibbs, 383 U.S. at 726.

## III. CONCLUSION

For the stated reasons, Moon's federal claims are dismissed without prejudice, and the state claims are dismissed under 28 U.S.C. § 1367(c). The Clerk is directed to close this action.

Dated: September 7, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge