1
2
3
4
5
6
7              IN THE UNITED STATES DISTRICT COURT

8           FOR THE EASTERN DISTRICT OF CALIFORNIA

9
10  VIRGINIA C. MOON, on her own      )
    behalf and on behalf of the      )    2:11-cv-03102-GEB-CKD
11  Peters Rush Habib & McKenna       )
    401(k) Profit Sharing Plan,       )
12                                    )    ORDER DENYING DEFENDANTS'
              Plaintiff,              )    DISMISSAL AND SUMMARY
13                                    )    JUDGMENT MOTIONS; GRANTING IN
         v.                           )    PART AND DENYING IN PART
14                                    )    COUNTERDEFENDANT'S DISMISSAL
    DAVID H. RUSH, MARK A. HABIB,     )    MOTION; AND SCHEDULING STATUS
15  and JAMES P. MCKENNA,             )    CONFERENCE
                                      )
16            Defendants.             )
    _____    )
17                                    )
    DAVID H. RUSH                     )
18                                    )
              Counterclaimant,        )
19                                    )
         v.                           )
20                                    )
    VIRGINIA C. MOON,                 )
21                                    )
              Counterdefendant.       )
22  _____    )

23          Defendants move for dismissal of this action under Federal

24  Rule of Civil Procedure ("Rule") 12(h)(3) and move in the alternative

25  for summary judgment under Rule 56. Plaintiff responds to the summary

26  judgment motion by requesting relief under Rule 56(d), and moves for

27
28

                                   1

dismissal of counterclaimant Rush's counterclaims under Rule 12(b)(6).[1] Each motion is opposed.

## I. BACKGROUND

This action concerns Plaintiff's divorce-based property interests in a defined contribution employee pension benefit plan, which is governed by ERISA and called the Peters Rush Habib & McKenna 401(k) Profit Sharing Plan (the "Plan"). (Decl. of Nina Wasow in Supp. of Pl.'s Opp'n to Mot. to Dismiss ("Wasow Decl."), ECF No. 44, Ex. 1; Compl. ¶¶ 1, 5; Answer ¶¶ 1, 5.) When Plaintiff and Rush divorced in 1995, the Superior Court of California, County of Butte (the "state court") entered a domestic relations order ("DRO") requiring that certain enumerated assets be segregated and held for Plaintiff's benefit. (Wasow Decl., Ex. 1, 3:24—31.) The DRO was "intend[ed] to dispose of [Plaintiff's] community property interest in [Defendant Rush's ERISA] Plan." (Id., Ex. 1, 1:23—24.) The DRO was entitled a "Stipulation & Order Dividing Community Interest in Employee Benefit Plan—Qualified Domestic Relations Order." (Id., Ex. 1, 1:11—14.) It was signed by and provided to Rush. (Id., Ex. 1, 6:29) Rush was also listed in the DRO as a trustee of Plan and as the person designated to receive notices on behalf of the Plan. (Id., Ex. 1, 2:1—28.)

For sixteen years after entry of the DRO, Plaintiff was treated by Defendants as a beneficiary of the Plan. (Id., Exs. 3—5, 10—11; Decl. of Virginia C. Moon in Supp. of Pl.'s Opp'n to Mot. to

---

[1] These motions are pending because, at the hearing on October 22, 2012, Plaintiff's Rule 60 motion was construed as a motion under Rule 59(e) and granted under Rule 59. See Sea Ranch Ass'n v. Cal. Coastal Zone Conservation Comm'ns, 537 F.2d 1058, 1061 (9th Cir. 1976) (treating a motion styled under Rule 60 as a motion under Rule 59(e) since such "nomenclature is not controlling"). Accordingly, the prior order issued in this case—Moon v. Rush, No. 2:11-cv-03102-GEB-CKD, 2012 WL 3962520 (E.D. Cal. Sept. 10, 2012)—was and hereby is vacated and withdrawn.

Dismiss ("Moon Decl."), ECF No. 35, ¶ 4; id., Exs. 1—13.) Funds were repeatedly deposited into a bank account titled "Peters et al Profit Sharing Plan fbo Virginia Rush aka Virginia Moon[,] David H. Rush[,] Trustee." (Id., Exs. 3 & 4.) Numerous documents were prepared acknowledging Plaintiff's ownership of a property specifically allotted to her by the DRO. (Moon Decl., Exs. 4—13.) The Plan Administrator sent Plaintiff a pension benefits statement describing her interest in the Plan based on the DRO. (Wasow Decl. ¶ 12; id., Ex. 11.)[2] Plaintiff declares that she was neither told of nor aware of "any additional steps needed to be taken to secure [her] interest in the Plan," and that her understanding was that the assets listed in the DRO were being held by the Plan for her benefit. (Moon Decl. ¶¶ 1, 3.)

Over sixteen years after entry of the DRO, and over sixteen months after specifically being asked by Plaintiff's counsel if the DRO was deemed not to be a Qualified Domestic Relations Order ("QDRO") under 29 U.S.C. § 1056(d)(3)(A), (Wasow Decl., Ex. 9), Defendants informed Plaintiff that they believed the DRO was not a QDRO. (Id. ¶ 15; id., Ex. 13.) After Plaintiff filed the instant federal lawsuit, Defendants moved in state court for a determination affirming the Plan Administrator's decision that the DRO was a QDRO. (Id. ¶ 16.) Defendants consistently represented to the state court judge in that action that the state court's determination would not affect this prior-commenced federal action. (Id., Ex. 14, 23:1—14, 25:16—18, 38:24—39:6, 40:23—41:1.) Once the state court affirmed Defendants' determination that the DRO was not

---

[2] The statement is titled: "Pension Benefits Statement Regarding Virginia Moon's Interest in Peters, et al Profit Sharing Plan, as set forth in Paragraph 9 of the Stipulation & Order Dividing Community Interest In Employee Benefit Plan entered September 26, 1995, in Marriage of Rush, Butte Superior Court Case No. FL004059." (Id., Ex. 11.)

a QDRO, (Perkins Decl., ECF No. 25, Ex. 1, 3:7—11), Defendants filed their pending motions to dismiss Plaintiff's lawsuit based on the state court's decision. (Defs.' Counter-Mot. for Dismissal or Summ. J. ("Defs.' Counter Mot."), ECF No. 24.) The state court's decision is now on appeal before the California Court of Appeals. (Wasow Decl. ¶ 19.)

## II. LEGAL STANDARD

### A. Rule 12(h)(3)

Challenges to a federal court's subject matter jurisdiction "may be raised by the parties at any time pursuant to [Rule] 12(h)(3)." Augustine v. United States, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983). Like a motion under Rule 12(b)(1), a Rule 12(h)(3) challenge "can be either facial or factual." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Facial challenges attack the pleadings as insufficient to invoke federal jurisdiction; factual challenges contest the truth of the jurisdictional pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack on jurisdiction, a court may "look beyond the complaint" to evaluate jurisdictional facts that are not intertwined with the merits. White, 227 F.3d at 1242. However, when the question of jurisdiction is dependent on the resolution of factual issues intertwined with the merits, dismissal for lack of subject matter jurisdiction is generally "improper." Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean, Geological Formation, 524 F.3d 1090, 1094 (9th Cir. 2008). "[A] federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) 'the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction'; or (2) 'such a claim is wholly insubstantial and frivolous.'" Leeson v.

1  _Transamerica Disability Income Plan_, 671 F.3d 969, 975 (9th Cir. 2012)

2  (quoting _Bell v. Hood_, 327 U.S. 678, 682—83 (1946)).

3  **B. Rule 12(b)(6)**

4          Decision on a Rule 12(b)(6) dismissal motion requires

5  determination of "whether the complaint's factual allegations, together

6  with all reasonable inferences, state a plausible claim for relief."

7  _United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc._, 637 F.3d

8  1047, 1054 (9th Cir. 2011) (citing _Ashcroft v. Iqbal_, 556 U.S. 662,

9  678—79 (2009)). "A claim has facial plausibility when the plaintiff

10 pleads factual content that allows the court to draw the reasonable

11 inference that the defendant is liable for the misconduct alleged."

12 _Iqbal_, 556 U.S. at 678 (citing _Bell Atl. Corp. v. Twombly_, 550 U.S. 544,

13 556 (2007)).

14         In evaluating a Rule 12(b)(6) motion, the court "accepts the

15 complaint's well-pleaded factual allegations as true and draws all

16 reasonable inferences in the light most favorable to the plaintiff."

17 _Adams v. U.S. Forest Serv._, 671 F.3d 1138, 1142—43 (9th Cir. 2012)

18 (citing _Twombly_, 544 U.S. at 555—56). However, this tenet does not apply

19 to "legal conclusions . . . cast in the form for factual allegations."

20 _Fayer v. Vaughn_, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation

21 marks omitted). "Therefore, conclusory allegations of law and

22 unwarranted inferences are insufficient to defeat a motion to dismiss."

23 _Id._ (internal quotation marks omitted); _see also Iqbal_, 556 U.S. at 678

24 ("A pleading that offers 'labels and conclusions' or 'a formulaic

25 recitation of the elements of a cause of action will not do.'" (quoting

26 _Twombly_, 550 U.S. at 555)).

27 ///

28 ///

## C. Rule 56

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." <u>Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n</u>, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Id.</u> (quoting <u>Anderson</u>, 477 U.S. at 248). To meet this burden, the movant must "inform[] the district court of the basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323 (internal quotation marks omitted).

If the movant satisfies its "initial burden," "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, '*specific facts* showing that there is a genuine issue for trial.'" <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (quoting former Fed. R. Civ. P. 56(e)); <u>see also</u> Fed. R. Civ. P. 56(c)(1). The nonmoving party "cannot 'rest upon the mere allegations or denials of the adverse party's pleading' but must instead produce evidence that 'set[s] forth specific facts showing that there is a genuine issue for trial.'" <u>Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.</u>, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting <u>Anderson</u>, 477 U.S. at 248). Further, Local Rule 260(b) requires:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized

> facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

E.D. Cal. R. 260(b). If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

> Because a district court has no independent duty "to scour the record in search of a genuine issue of triable fact," and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment," . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmoving party's] behalf.

Simmons v. Navajo Cnty., Arizona, 609 F.3d 1011, 1017 (9th Cir.2010) (quoting Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)); see also Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Ultimately, "[s]ummary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011).

## III. DISCUSSION

### A. Defendants' Rule 12(h)(3) Motion

Defendants argue that the court lacks subject matter jurisdiction over Plaintiff's federal question claims since Plaintiff

lacks statutory standing under ERISA due to the state court's decision that the DRO is not a QDRO under 29 U.S.C. § 1056(d)(3). (Defs.' Counter Mot. 10:24-17:24.) Plaintiff counters that statutory standing is an element of her ERISA claims, not a jurisdictional requisite, and her complaint asserts colorable ERISA claims since she "is or may become eligible to a benefit" under the Plan. (Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 33, 9:26 (quoting 29 U.S.C. § 1002(8)).)[3]

Jurisdictional dismissals in federal question cases are "'exceptional.'" Safe Air for Everyone, 373 F.3d at 1039 (quoting Sun Valley Gas, Inc. v. Ernst Enters., Inc., 711 F.2d 138, 140 (9th Cir. 1983)). So long as a plaintiff alleges a colorable federal claim for relief, dismissal for want of jurisdiction is inappropriate. Lesson, 671 F.3d at 979 ("By asserting a colorable claim that he is a plan participant, [plaintiff] has satisfied the threshold for establishing federal court subject matter jurisdiction."); see also id. at 971 (cautioning against "'drive-by jurisdictional rulings'" that confuse a "substantive element" of a claim with a "prerequisite for subject matter jurisdiction") (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 511 (2006)). A colorable ERISA claim exists "when a [claim] survives summary judgment," Corder v. Howard Johnson & Co., 53 F.3d 225, 230 (9th Cir. 1994), as Plaintiff's ERISA claims do here. See infra (denying Defendants' summary judgment motion). Thus Defendants' challenge to

---

[3] In her supplemental briefing, Plaintiff contends that diversity of citizenship supplies an alternate basis for federal subject matter jurisdiction. (See Pl.'s Brief on Recons. ("Pl.'s Suppl. Brief"), ECF No. 63, 2:15—16.) Defendants counter that Plaintiff has neither "plead nor proven the required basis for diversity jurisdiction," and "[a]t a minimum, [she] must . . . re-file her [c]omplaint" to allege diversity jurisdiction. (Defs.' Resp. in Opp'n to Recons.("Defs.' Suppl. Reply"), ECF No. 64, 11:10—12.) Since federal question jurisdiction exists in this case, these arguments are not reached.

Plaintiff's statutory standing does not implicate Plaintiff's constitutional standing or the court's subject matter jurisdiction. See Harris v. Amgen, Inc., 573 F.3d 728, 732 n.3 (9th Cir. 2009) (recognizing that statutory standing affects a plaintiff's ability to state a claim, not her ability to establish federal subject matter jurisdiction); Vaughn v. Bay Envtl. Mgmt., Inc., 567 F.3d 1021, 1024 (9th Cir. 2009) (same).[4]

Notwithstanding Defendants' arguments to the contrary, even Defendants agree that Plaintiff has a colorable claim to benefits under the Plan. Defendants accept "Plaintiff's right to ultimately receive full benefits under the Plan." (Defs.' Reply in Supp. of Counter-Mot. ("Defs.' Reply"), ECF No. 40, 16:25.) They "have never disputed that Plaintiff has an interest in the Plan." (Defs.' Suppl. Brief in Supp. of Counter-Mot. for Dismissal ("Defs.' Suppl. Brief"), ECF No. 62, 5:11-12; see also Defs.' Suppl. Reply 4:20-22.) Given the low threshold for colorable ERISA claims, Defendants have admitted that Plaintiff states colorable claims for relief sufficient to establish subject matter jurisdiction. See Corder, 53 F.3d at 230—31 (finding a plaintiff asserted a "colorable theory that it [wa]s one of the enumerated parties specified" in 29 U.S.C. § 1132 even though its claim ultimately "lack[ed] any evidentiary basis"); see also Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 878 (7th Cir. 2001) (describing ERISA's non-stringent

---

[4] Defendants urge the court to dismiss Plaintiff's claims for lack of subject matter jurisdiction based on the holdings of Ninth Circuit cases that have been explicitly overruled—without any mention of the overruling. (See Defs.' Counter Mot. 15:12—17 (arguing that the court should adopt the holdings of Curtis v. Nevada Bonding Corp., Harris v. Provident Life Accident Insurance Co., and Freeman v. Jacques Orthopaedic & Joint Implant Surgery Medical Group, Inc. without stating that these holdings were explicitly overruled as lacking in precedential effect by Leeson). Defendants' arguments are not well taken.

colorable claim requirement); <u>Sedlack v. Braswell Servs. Grp., Inc.</u>, 134 F.3d 219, 226 (4th Cir. 1998) (same). Accordingly, Defendants' Rule 12(h)(3) motion is denied.[5]

**B. Defendants' Rule 56(c) and Plaintiff's Rule 56(d) Motions**

Defendants seek summary judgment on Plaintiff's ERISA claims, arguing that "Plaintiff's ERISA claims may only be brought by a Plan participant, beneficiary or fiduciary or by the Department of Labor," and Plaintiff is none of these. (Defs.' Counter Mot. 18:2–3 (citing 29 U.S.C. § 1132(a)).) Due to her DRO, Plaintiff is currently a statutory "alternate payee." 29 U.S.C. § 1056(d)(3)(K). It is undisputed that if Plaintiff's DRO were qualified—meaning it met the specificity requirements of § 1056(d)(3)(C)—Plaintiff would have statutory standing as a beneficiary on that basis. 29 U.S.C. § 1056(d)(3)(J). Absent a QDRO, the issue is whether Plaintiff has nonetheless established a genuine issue of material fact as to her statutory standing. Defendants argue that "Plaintiff's sole basis for ERISA standing fails on the merits" since the Plan Administrator and state court have already ruled that the DRO is not a QDRO under 29 U.S.C. § 1056(d)(3). (Defs.' Counter Mot. 18:7-8.)

---

[5] In a footnote in their reply brief, Defendants request that "the Court treat Defendants' motion under [Rule] 12(h)(3) as a motion to dismiss pursuant to [Rule] 12(b)(6)" if "the Court concludes that the issue of whether Plaintiff is a 'beneficiary' is not a jurisdictional question, but [] a merits question." (Defs.' Reply 14:11 n.10.) However, a "district court need not consider arguments," let alone motions, "raised for the first time in a reply brief." <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007); <u>see also Mishler v. Clift</u>, 191 F.3d 998, 1009 n.8 (9th Cir. 1999) (declining to consider even a purely legal argument raised for the first time in movant's reply brief, since doing so would prejudice the nonmovants and deprive them of the opportunity to respond). This request is therefore denied.

Plaintiff counters that she has statutory standing because (1) "according to the plain meaning of ERISA she 'may become entitled to a benefit' under the Plan," making her a beneficiary under 29 U.S.C. § 1002(8), (Pl.'s Opp'n 16:26-27 (quoting 29 U.S.C. § 1002(8)); (2) she "will obtain a Plan benefit if she prevails on her [breach of fiduciary duty] claims," and "[t]he circuit courts have unanimously held that a plaintiff who may become eligible for a plan benefit as a result of prevailing on a claim for breach of fiduciary duty has statutory standing," (id. 15:24, 16:4—6); and (3) any decision otherwise would undermine ERISA's purpose and the Ninth Circuit's prescription that ERISA's "'standing requirements should be construed broadly'" to permit beneficiaries to enforce their rights. (Id. 18:9 (quoting Vaughn, 567 F.3d at 1030).) Plaintiff also argues that Defendants should be judicially estopped from adopting "clearly inconsistent" positions in state court and this court, (id. 20:17 n.10), and equitably estopped from disclaiming Plaintiff's beneficiary status after acting as though Plaintiff was a beneficiary for sixteen years. (Id. 22:10—24:18.)

Statutory standing under ERISA is interpreted in light of ERISA's stated statutory purpose: "to protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by providing . . . ready access to the Federal courts." 29 U.S.C. § 1001(b) (emphasis added); see McBride v. PLM Int'l, Inc., 179 F.3d 737, 744 (9th Cir. 1999) (interpreting ERISA to confer statutory standing on plaintiff who was not a participant at the time of suit given ERISA's "policy and purpose" of securing "ready access to the Federal courts"); see also Vaughn, 567 F.3d at 1027 (granting plaintiff statutory standing since "ERISA's goals can be effectuated only if plaintiffs have standing"); Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207 F.3d 1143, 1147,

1157 (9th Cir. 2000) (conveying standing to former spouse "to protect her rights and interests as an alternate payee" given defendants' failure to inform her of either the procedures for QDRO determinations or the decision that no QDRO existed); <u>Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock</u>, 861 F.2d 1406, 1411 (9th Cir. 1988) (construing ERISA § 1002(8) to confer statutory standing on plaintiffs who were not beneficiaries at the time of suit "to give effect to the goals of ERISA").[6] Similarly, ERISA's QDRO provision is often interpreted in conformity with its purpose: "to protect the financial security of divorcees." <u>In re Gendreau</u>, 122 F.3d 815, 817 (9th Cir. 1997); <u>see id.</u> at 819 (refusing to read ERISA's QDRO provision in a manner that would "thwart" its purpose of protecting divorcees); <u>Stewart</u>, 207 F.3d at 1146–58 (similar).

Plaintiff argues she has standing to sue as a beneficiary of the Plan under 29 U.S.C. § 1002(8). (Pl.'s Opp'n 14:10–15:20.) "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Here, there is no dispute that Plaintiff "is or may become entitled to a benefit" under the Plan. (<u>E.g.</u>, Defs.' Reply 16:25-26; Defs.' Suppl. Brief 8:14-15; Defs.' Suppl. Reply 4:20-22.) "Defendants have never disputed that Plaintiff" will eventually "be entitled to distribution of the benefits from the Plan."

---

[6] Defendants attempt to distinguish many of these cases, arguing that in these cases affording standing was necessary to prevent harm to plaintiffs, whereas here Plaintiff will not be harmed by a finding that she lacks standing since she can obtain full benefits under the Plan once she obtains a QDRO. (Defs.' Reply in Supp. of Counter Mot. 15:23–18:10.) This argument is unpersuasive in light of the potential time bar to Plaintiff's other claims—for breaches of fiduciary duty, deficient document disclosure, and prohibited transactions—if Defendants' motion is granted.

(Defs.' Suppl. Brief 5:11—13.) Further, the DRO acknowledges Plaintiff's ownership interest in the Plan "in conformance with . . . the lawful provisions of . . . the [P]lan"—strongly implying that Plaintiff is designated by the Plan to receive benefits. (Wasow Decl., Ex. 1, 1:26—28.) Plaintiff also argues that "Rush, a [P]lan participant, designated her to receive a benefit under the Plan when he stipulated to the self-styled QDRO allocating a portion of his benefits to [Plaintiff]." (Pl.'s Reply Brief on Recons., ECF No. 65, 6:5—6.)[7] Although Plaintiff lacks a QDRO, given the limited record before this court, Plaintiff has shown a genuine issue of material fact as to her statutory standing. Defendants' summary judgment motion is therefore denied. Plaintiff's request for relief under Rule 56(d) is also denied, (see Pl.'s Opp'n 15:17-20), since the facts Plaintiff identifies as essential to justify her opposition have not been shown to be necessary to disposition of Defendants' summary judgment motion.

## C. Plaintiff's Rule 12(b)(6) Motion

Plaintiff-Counterdefendant Moon seeks dismissal of Defendant-Counterclaimant Rush's first amended counterclaims ("FACC") for breach of contract, account stated, and accounting.

## Factual Allegations

Rush alleges the following in his FACC. Rush and Moon are "co-tenants" of a rental property "just south of Chico, located at 1525 Dayton Road" (the "property"). (FACC ¶¶ 32, 7.) As co-tenants, Rush and "Moon orally agreed to split the net proceeds from the rental income on

---

[7] No party has supplied the court with a copy of the Plan. Cf. Metro. Life Ins. Co. v. Parker, 436 F.3d 1109, 1115 (9th Cir. 2006) ("ERISA is silent on the *manner* in which the designation of a beneficiary is made. Consequently, such determinations are left [to] the governing terms of the benefit plan.").

the property . . . in proportion to their ownership interests." (Id. ¶ 31.) Although the parties' "agreement to split the rent [from the property] was never reduced to writing, Moon's agreement to this approach [wa]s evidenced by Moon's course of conduct" and her representations "that she would pay [Rush] the rental proceeds owed to him." (Id. ¶¶ 31, 45.) From "March of 1999 . . . until June 1, 2009, all rental proceeds from the property were [either] initially paid to Moon" or deposited by Rush "into Moon's personal bank account." (Id. ¶ 19.) Rush would then send to Moon written statements "[o]n an approximately annual basis" listing the property expenses paid by Rush and the share of the net rental proceeds due to Rush. (Id. ¶ 33.) Moon acknowledged and paid Rush's first two statements. (Id. ¶¶ 20, 21.) Thereafter, "[e]ach year, Moon acknowledged both verbally and through her conduct that she owed Rush the proportional rental income [and expense reimbursement] provided in each annual statement." (Id. ¶ 22.) However, Moon failed to make any further payments on Rush's statements—even after Rush's August 2006 statement indicated Rush's belief that payment was past due. (Id. ¶¶ 23—28.) On May 10, 2009, Rush sent Moon a final statement listing "the total amount owed to Rush [cumulatively for 2003 to 2009] as $86,470.87." (Id. ¶ 29.) This total did not include any expenses paid by Moon, since Moon "never provided Rush with an accounting of what [property] expenses she paid, if any." (Id. ¶ 30.) In June 2009, Rush, who "could no longer afford to continue to grant credit to Moon," began "crediting Moon's portion of the rental proceeds to the debt owed to him" instead of depositing the rental proceeds into Moon's bank account. (Id. ¶ 28.)

///

///

**1. Breach of Contract**

Moon argues that Rush's breach of contract counterclaim should be dismissed since Rush "fails to allege any breach of contract" because he does not allege "that performance was due" from Moon before Rush filed suit, and "[t]o the extent that he still alleges a breach," his claim is time barred. (Counterdef. Moon's Mot. to Dismiss Am. Counterclaims ("Mot."), ECF No. 19, 6:2, 8:10, 1:19.)

**(a) Time for Performance**

Under California law, "'[t]here can be no *actual* breach of a contract until the time specified therein for performance has arrived.'" Romano v. Rockwell Int'l, Inc., 14 Cal. 4th 479, 488 (1996) (quoting Taylor v. Johnston, 15 Cal. 3d 130, 137 (1975)). Moon contends that at most Rush alleges an agreement "for him to deposit all rent into Ms. Moon's bank account, and for her to remit to him a share of the rent no later than termination of the co-tenancy," which has yet to occur. (Mot. 7:16—8:1.) Rush responds that "[w]hile the parties did not agree to a set timeline upon which Moon was required to repay Rush, the course of conduct establishes that their agreement was for Moon to reimburse Rush within a reasonable amount of time after receiving Rush's [payment] statement[s]," which Moon has failed to do. (Counterpl. Rush's Opp'n to Mot. to Dismiss First Am. Counterclaims ("Opp'n"), ECF No. 23, 6:24—28.) Rush also rejoins that "Moon's failure to pay to Rush any portion of the rental income from the property since July of 2003, as detailed in the FAC[C], is a breach of that obligation." (Id. 6:27—7:1.) Moon argues that Rush's breach of contract claim involves "two distinct theories"—an express oral contract and an implied-in-fact contract—neither of which succeeds. (Counterdef. Moon's Reply in Supp. of Mot. to Dismiss Am. Counterclaims ("Reply"), ECF No. 45, 4:1.) Moon argues Rush cannot

allege breach of an express oral contract since Rush concedes that the parties did not agree to a set timeline for repayment, (id. 4:4—10); nor can Rush argue that an implied-in-fact contract arose from a ten-year period during which "Rush sent 'analyses' in seven years and Ms. Moon made payments in two." (Id. 5:6.)

"[T]he terms of an express contract are stated in words, while those of an implied agreement are manifested by conduct." Youngman v. Nev. Irrigation Dist., 70 Cal. 2d 240, 246 (1969) (citing Cal. Civ. Code §§ 1620, 1621). However, this difference in proof does not give rise to a significant difference in function, id., and thus a contract need not be either solely express or solely implied. "'[A]dditional, implied terms'" may be incorporated into an express contract based on the conduct of the parties. Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange, 52 Cal. 4th 1171, 1178 (2011) (quoting Scott v. Pac. Gas & Elec. Co., 11 Cal. 4th 454, 463 (1995)). Likewise, the very existence of a contract "may be inferred wholly or partly from conduct," and the terms of a contract may be "expressed in the language of the parties or implied in fact from other conduct." Restatement (Second) of Contracts §§ 4, 5. Since Rush need not allege the existence of a contract with entirely express or entirely implied terms, Moon's argument that Rush cannot establish such a contract is unavailing.

Rush specifically alleges the following in support of his breach of contract counterclaim: "he and Moon orally agreed to split the net proceeds from the rental income on the property . . . in proportion to their ownership interests," (FACC ¶ 31); in August 2002, Rush sent Moon a bill for $11,013.11, as his portion of the net rental proceeds through 2001, (id. ¶ 20); later that month, Moon paid Rush with a check for $5000, stating in the check memo "part reimb. 11,013.11," (id.); in

November of that year, Moon sent Rush a second check for $6013.11, stating in the check memo "Thru 12/01," (id.); in June 2003, Rush sent Moon a bill for $10,218.84, for his portion of the 2002 net rental proceeds,(id. ¶ 21); and in July of that year, Moon sent Rush a check for $10,281.84 and enclosed a note stating, "Well, once again I guess we are square on Dayton Rd. rent for another year past. Thanks for your kind patience." (Id.) Rush also attaches to his counterclaim a copy of each of these documents. (Id., Exs. A—E.)

Under California law, "[i]f no time is specified for the performance of an act required to be performed, a reasonable time is allowed." Cal. Civ. Code § 1657; accord Fosson v. Palace (Waterland), Ltd., 78 F.3d 1448, 1453 (9th Cir. 1996) (rejecting argument that contract was illusory because it did not "specify when payment should be made" since "under California law, where no time limit is specified for performance of an act, a reasonable time is implied"); Wagner Const. Co. v. Pac. Mech. Corp., 41 Cal. 4th 19, 30 (2007) (implying contract term requiring "reasonable time" for performance based on the "general principle of contract law" codified in Cal. Civ. Code § 1657). Rush's allegations of the parties' express statements and implied conduct are sufficient to allege the existence of a contract term requiring repayment within a reasonable time. Further, Rush's allegation that Moon has not made a payment since 2003 is sufficient to allege a breach of that term. Accordingly, this portion of Moon's dismissal motion is denied.

**(b) Statute of Limitations**

Moon argues that Rush's breach of contract claim is time barred by Cal. Civ. Proc. Code § 339(1)'s "two-year statute of limitations for claims for breach of an oral contract" since the statute

of limitations expired on Moon's breaches "before Mr. Rush filed his counterclaims" and before the parties' tolling agreement went into effect. (Mot. 9:10—11, 9:16—17.) Rush counters that in California, "'when there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract.'" (Opp'n 7:21—23 (quoting Romano, 14 Cal. 4th at 489).) Rush argues that Moon "breached the agreement by failing to repay [Rush] within a reasonable time period," but "Rush elected not to terminate the agreement, but to continue relying on the contract . . . until June of 2009, when he terminated the contract and stopped depositing all rental proceeds into Moon's bank account." (Opp'n 7:28—8:2, 8:6—7.) Moon responds that this accrual argument is "untenable" since it would allow Rush to circumvent the statute of limitations "indefinitely" until such time as Rush elected to terminate the contract. (Reply 8:4, 9:17 (citing Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc., 688 F. Supp. 2d 940 (N.D. Cal. 2010)).)

      The two-year limitations period under Cal. Civ. Proc. Code § 339(1) for breach of an unwritten contract began to run once Rush's "cause of action [wa]s complete with all its elements." Norgart v. Upjohn Co., 21 Cal. 4th 383, 389 (1999). All elements of Rush's claim existed by August 2006, when Rush indicated that Moon's payments were past due under the agreement. (See FACC, Ex. H.) Thus, unless Rush's accrual argument succeeds, the two-year limitations period expired long before Rush filed his counterclaims or the tolling agreement went into effect in this case. Rush relies on Romano v. Rockwell International, Inc. in support of his argument that his claim did not accrue until he elected to terminate the parties' ongoing agreement. In Romano, the

employee-plaintiff was notified that he would be terminated, but waited until after he was actually forced to retire to file suit. Romano, 14 Cal. 4th at 484—85. At that point, the employer-defendant argued the employee's claim was time barred, basing the accrual date on the date the employee received initial notice that he would be terminated. Id. at 485—86. The California Supreme Court rejected the employer's argument "because [the employee] continued to perform and accept compensation until the time of [his] actual termination." Id. at 490. The court explained that "whether the breach is anticipatory or not, when there are *ongoing contractual obligations* the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract." Id. at 489 (emphasis added). However, the court's conclusion was limited to "a contract that has not been terminated." Gen. Sec. Servs. Corp. v. Cnty. of Fresno, 815 F. Supp. 2d 1123, 1136 (E.D. Cal. 2011). Unlike in Romano, however, here, the parties' agreement was for repayment alone. Once Moon breached the repayment agreement by failing to repay Rush within a reasonable period, there were no "ongoing contractual obligations" between the parties that could forestall accrual of the limitations period. Romano, 14 Cal. 4th at 489. Rush had no basis for believing that the breached repayment contract was not actually terminated and thus no option to "elect[] to treat the contract as still in effect." Id. at 490.[8] Accordingly, the limitations period began to run at least by August 2006, when Rush

---

[8] As Moon notes, a contrary reading of Romano would permit a plaintiff to "wait[] fifty years before filing" suit and then recoup "fifty years worth of damages . . . lead[ing] to absurd and inequitable results," statutes of limitation notwithstanding. Boon Rawd Trading Int'l Co., Ltd., 688 F. Supp. 2d at 949.

indicated that Moon's payments were past due. (See FACC, Ex. H.) Under Cal. Civ. Proc. Code § 339(1), the limitations period on the parties' unwritten agreement expired two years later, years before Rush filed his counterclaims or the parties entered into the tolling agreement in this case. Accordingly, this portion of Moon's dismissal motion is granted.

## 2. Account Stated

Moon argues Rush's account stated claim fails since Rush "does not plead a definite and fixed sum that he claims is due" and since Moon "objected" to the account stated. (Mot. 12:15—16, 14:2.)

### (a) Definite Balance

Moon argues Rush's account stated claim fails since Rush "does not plead a definite and fixed sum that he claims is due," but instead alleges his entitlement to recover "'\$86,470.87 . . . minus any credits to which Moon is entitled.'" (Mot. 12:15—16, 13:1 (quoting FACC ¶ 51).) Moon contends that Rush's admission that Moon "will be entitled to offsets" or credits defeats the definiteness of Rush's account stated claim. (Reply 2:18—27 (citing H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp., 99 Cal. App. 3d 711 (1979); Metro. Water Dist. of S. Cal. v. Adams, 57 Cal. App. 2d 574 (1943)).) Rush counters that despite this admission "the amount owed by Moon to Rush on the account stated for the 2003 through 2009 period (\$86.470.87) is specifically and finally alleged," covering Rush's portion of the property's rental income and expenses from 2003 through 2009. (Opp'n 10:22—25.)

"An account stated is an agreement, based on prior transactions between the parties, that all items of the account are true and that the balance struck is due and owing from one party to the other." Trafton v. Youngblood, 69 Cal. 2d 17, 25 (1968). However, "[a]n

account stated need not cover all the dealings or claims between the parties." Gleason v. Klamer, 103 Cal. App. 3d 782, 790 (1980); Cal. Milling Corp. v. White, 229 Cal. App. 2d 469, 477 (1964) ("[T]here may be . . . an account stated as to part of the financial relationship of parties without arriving at a balance as to all of their monetary dealings."). "[C]ertain items" may be definitely fixed under an account stated while others are "le[ft] open for adjudication or adjustment," making Rush's account stated a partial, but definite, statement of the amount due. Cal. Milling Corp., 229 Cal. App. 2d at 477.

However, Moon argues that Rush's account stated claim "is on all fours with the pleading[s] rejected in H. Russell Taylor's" and Metropolitan Water District. (Mot. 13:9—10.) In Metropolitan Water District, no account stated existed since the sum stated as due comprised the separate and yet to be ascertained amounts due and owing from at least three different sources. 57 Cal. App. 2d at 575—77. Meanwhile, in H. Russell Taylor, the California Court of Appeals found no account stated existed for three separate and sufficient reasons, one of which was that plaintiff "pleaded an account stated 'in excess of' $32,013.25," without specifying what charges he included and excluded from this accounting. 99 Cal. App. 3d at 715—16, 727. Neither of these cases demonstrates that Rush's claim for "the $86,470.87 owed to him" is not definite or fixed simply because it does not account for any countervailing credits owed to Moon. (FACC ¶ 51.) Thus Rush has sufficiently alleged a definite and fixed "account stated as to some of the transactions" between the parties, Gleason, 103 Cal. App. 3d at 790, if Moon's other argument fails.

///

///

### (b) Agreement to Pay

Moon argues Rush cannot allege an *agreement* to pay the account stated since "Moon filed the instant suit" asserting claims inconsistent with any such agreement. (Mot. 14:11—12.) Rush responds that since Moon "did not file her lawsuit until . . . a year and a half after receiving" the account stated, she acquiesced and thereby agreed to the account stated. (Opp'n 10:12—14.)

Agreement to pay an account stated "need not be express, but may be implied from the circumstances." Trafton, 69 Cal. 2d at 25; accord Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec, 854 F.2d 1538, 1543 (9th Cir. 1988); Maggio, Inc. v. Neal, 196 Cal. App. 3d 745, 753 (1987). If an account stated is "'sent to the debtor and he do[es] not object to it within a reasonable time, his acquiescence will be taken as an admission that the account is truly stated.'" Trafton, 69 Cal. 2d at 25 (quoting Terry v. Sickles, 13 Cal. 427, 429 (1859)); accord Maggio, Inc., 196 Cal. App. 3d at 753. Further, "under certain circumstances" acquiescence may be implied from failure to object to an account stated for a manner of months. Schneider v. Oakman Consol. Mining Co., 38 Cal. App. 338, 342 (1918) (recognizing a six-month standard). Since Rush alleges Moon failed to object to the account stated for over eighteen months, this portion of Moon's dismissal motion is denied.

### 3. Accounting

Moon argues Rush cannot state a "'plausible'" claim for an accounting since his claim "is in direct contradiction of his claim for an account stated" and is insufficiently pled. (Mot. 15:19—21 (quoting Iqbal, 556 U.S. at 678).) Rush's accounting claim alleges that "[a] balance is owed by Moon to her co-tenant Rush, which can only be

1  properly determined by an accounting," (FACC ¶ 39), whereas Rush's other

2  claims allege that Rush's "'analyses' reflect 'the appropriate

3  distribution of net rental proceeds' or 'the appropriate allocation of

4  rental proceeds.'" (Reply 9:28—10:1 (quoting FACC ¶¶ 20, 23, 29).) Rush

5  counters that his accounting claim is properly pled in the alternative

6  to his other claims, and sufficiently pled to state a claim. (Opp'n

7  11:1—23.)

8       Under the Federal Rules, "'a pleading should not be construed

9  as an admission against another alternative or inconsistent pleading in

10 the same case.'" Aholelei v. Dep't of Pub. Safety, 488 F.3d 1144, 1149

11 (9th Cir. 2007) (quoting Molsbergen v. United States, 757 F.2d 1016,

12 1019 (9th Cir. 1985)). A party has a right to "state as many separate

13 claims or defenses as it has, regardless of consistency," Fed. R. Civ.

14 P. 8(d)(3), and a district court should examine the sufficiency of each

15 inconsistent claim "independently." Molsbergen, 757 F.2d at 1019. Since

16 allegations supporting one claim do not affect the independently

17 assessed plausibility of another claim, Moon's plausibility argument

18 fails.

19      For Rush to state a "'cause of action for an accounting

20 requires a showing that a relationship exists between the plaintiff and

21 defendant that requires an accounting, and that some balance is due the

22 plaintiff that can only be ascertained by an accounting.'" Jolley v.

23 Chase Home Fin., LLC, 213 Cal. App. 4th 872, 910 (2013) (quoting Teselle

24 v. McLoughlin, 173 Cal. App. 4th 156, 179 (2009)). Rush alleges that he

25 and Moon are "co-tenants," "Moon has not provided [him] with an

26 accounting of her alleged expenses," and "[a] balance is owed by Moon to

27 [him], which can only be properly determined by an accounting." (FACC ¶¶

28 32, 38, 39.) This is enough to state a claim for an accounting. See

5 Witkin, <u>California Procedure</u> § 820 (5th ed. 2008) ("To state a cause of action [for an accounting], only the simplest pleading is required . . . ."); <u>see also</u> <u>Teselle</u>, 173 Cal. App. 4th at 179 ("All that is required is that some relationship exists that requires an accounting . . . [due to] the possession by the defendant of money or property which . . . the defendant is obliged to surrender."). Accordingly, this portion of Moon's dismissal motion is denied.

## IV. CONCLUSION

For the stated reasons, Defendants' motions are denied. Plaintiff's motion to dismiss counterclaimant Rush's breach of contract claim is granted based on the running of the limitations period. The remainder of Plaintiff's dismissal motion is denied. Rush is granted fifteen (15) days leave from the date this Order is filed to amend his breach of contract claim addressing the deficiencies identified in this Order.

Further, in light of this action's procedural history, the Status (Pretrial Scheduling) Order filed March 1, 2012, is vacated. A Status (Pretrial Scheduling) Conference is scheduled for hearing on September 16, 2013, at 9:00 a.m. A joint status report shall be filed no later than fourteen (14) days prior to the Status Conference.

Dated:  August 5, 2013

GARLAND E. BURRELL, JR.
Senior United States District Judge